### JULIA A. RILEY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.     November 8, 1928. — November 27, 1928.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Negligence,* Street railway, Motor vehicle, In use of highway, Contributory.

At the trial of an action of tort against a street railway company for damage to an automobile owned by the plaintiff and operated by his agent, there was evidence that the operator of the automobile, going slowly, passed a street car of the defendant between it and the curb just as it was starting up, going in the same direction; that he proceeded at least one hundred fifty feet without looking back; that, at a place where the street narrowed between the tracks and the curb, the street car struck the left rear part of the automobile and pushed it onto the sidewalk into a tree. *Held,* that

(1) A finding was warranted that the plaintiff's automobile had fairly passed the street car and got well within the vision of the motorman;

(2) It could not be ruled as a matter of law that the operator of the plaintiff's automobile was guilty of contributory negligence;

(3) There was evidence of negligence on the part of the motorman.

TORT.     Writ dated February 29, 1924.

Material evidence at the trial in the Superior Court before *Hammond,* J., is stated in the opinion. With leave reserved by the judge under G. L. c. 231, § 120, a verdict for the plaintiff in the sum of $950 was recorded. Thereupon the judge allowed a motion by the defendant that a verdict be entered in its favor, and reported the action for determination by this court, the verdict for the defendant to stand if the allowance of the defendant's motion was proper; otherwise the verdict for the defendant to be set aside and the verdict for the plaintiff to stand.

*A. R. Shrigley,* for the plaintiff.

*S. P. Sears,* (*E. K. Nash* with him,) for the defendant.

RUGG, C.J.     This is an action of tort wherein the plaintiff seeks to recover compensation for damage to her automobile caused by the negligent operation of a street car belonging to and operated by the defendant.

The automobile of the plaintiff was being driven by her agent on Brookline Street, in Cambridge, at about half past six in the afternoon of August 25, 1923. It was raining. The testimony of the plaintiff's agent, in substance, was "that at the end of the car line (on Brookline Street) opposite the Ford plant, an electric car was just starting off; that it began to move just as he got up to the rear of it; that as he passed it, it was moving at a low rate of speed, had not gained any increased momentum. The car had been stopped in front of the Ford factory . . . that he passed it between the tracks and the curbing on the easterly side of Brookline Street; that as he passed the electric car it was just starting off. He was then going very slowly on account of the condition of the street, approximately between ten and fifteen miles an hour; that there was no other car ahead of him within his vision; that after he passed the car he did not see it again (until the accident); that after he passed the street car and when he had proceeded to a place where the road narrows into the sidewalk, he felt a bump on the left hand rear end of the automobile, that is, on the left hand side. Within thirty seconds or ten seconds he got a more severe bump from the rear and the front end, the right side front end (of the automobile) was pushed up on the sidewalk; that he turned to see what the difficulty was and saw the door of the Boston Elevated one-man electric car, which was proceeding in the same direction (i.e. toward Central Square, Cambridge), and that after going on for about five seconds, both the automobile and the car came to a stop, the automobile being jammed in between the street car and a tree which is marked upon the plan by a cross . . . that the automobile was at an angle with reference to the street car, the rear end of the automobile was against the street car; that both its rear wheels, right and left, were broken and smashed, and the right hand front wheel was also broken . . . . The tail light was broken, it was all twisted and the glass was ground right in to the back of the body of the machine. . . . When he got ahead of the street car, he did not step on the throttle. He did not look back to see if the car was coming; that he looked ahead."

There was no positive testimony in behalf of the plaintiff as to the distance traversed by her automobile between the passing by it of the trolley car of the defendant and the point of collision. A plan was introduced in evidence. This plan does not show "the end of the car line . . . opposite the Ford plant." It does show the Ford factory and a white pole nearly opposite the end nearer the point of collision. The distance from a point on the plan at about opposite this white pole to the point of collision as shown on the plan is, according to the scale shown thereon, about one hundred fifty feet. This distance would be greater if the end of the car line was not at the white pole. There was evidence tending to contradict that which has been quoted, but the case must be considered on the aspect of the evidence most favorable to the plaintiff.

The evidence already quoted warranted a finding that the agent of the plaintiff, in her automobile, had fairly passed the car of the defendant and was substantially ahead of that car. It might have been found that he was well within the range of vision of the driver of the defendant's car, who was bound to act toward the agent of the plaintiff in her automobile the same as toward any other traveller ahead of him on the street. A motorman is required to "keep the street in front of his moving car constantly within his view." *Kiley* v. *Boston Elevated Railway,* 207 Mass. 542, 544. The case, therefore, falls within the line of decisions where it has been held that ordinarily a defendant cannot run into from behind another traveller without affording evidence of negligence. *Vincent* v. *Norton & Taunton Street Railway,* 180 Mass. 104. *Le Baron* v. *Old Colony Street Railway,* 197 Mass. 289. *Jeddrey* v. *Boston & Northern Street Railway,* 198 Mass. 232. *Callahan* v. *Boston Elevated Railway,* 205 Mass. 422. *Farris* v. *Boston Elevated Railway,* 210 Mass. 585. *Moriarty* v. *Connecticut Valley Street Railway,* 213 Mass. 97. *Sharp* v. *Boston Elevated Railway,* 251 Mass. 106. See *Woolner* v. *Perry, ante,* 74. These same cases support the view that the agent of the plaintiff might have been found to have been in the exercise of due care.

The case at bar is distinguishable from *Glennon* v. *Boston*

*Elevated Railway*, 251 Mass. 103, and cases there collected, *Larkin* v. *Boston Elevated Railway*, 253 Mass. 318, and *Behmer* v. *Worcester Consolidated Street Railway*, 253 Mass. 494, where the evidence did not go far enough to show that the plaintiff had actually passed the trolley car so as to afford ground for the conclusion that the defendant, from the rear, ran into a traveller fairly within his vision and ahead of him upon the street.

It follows that the order of the judge directing a verdict for the defendant is wrong, and that, in accordance with the terms of the report, the order allowing the motion for a directed verdict for the defendant is to be set aside and the original verdict of the jury for the plaintiff is to stand.

*So ordered.*